JAMES R. RAPIER, JR., *et al.*, Plaintiffs-Appellants, v. FIRST BANK AND TRUST COMPANY OF ILLINOIS, f/k/a First Bank and Trust Company of Palatine, Defendant (Trans Union Credit Information Company, Defendant-Appellee).

First District (2nd Division)   No. 1—98—3191

Opinion filed November 16, 1999.

Tenney & Bentley, L.L.C., of Chicago (Richard J. Cochran and Ralph T. Wutscher, of counsel), for appellants.

Rudnick & Wolfe, of Chicago (Monica L. Thompson and David M. Popham, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiffs, James R. Rapier, Jr., and Bonnie L. Rapier, appeal from an order of the trial court granting the motion of Trans Union Corporation (Trans Union) to quash service of process and vacate a default judgment entered against Trans Union Credit Information Company (Trans Union Credit) in May 1992. Plaintiffs also appeal from an order of the trial court denying their motion to reconsider. We affirm.

On December 18, 1987, plaintiffs filed an action for breach of contract and defamation in which they alleged that First Bank and Trust Company of Illinois (First Bank) filed an erroneous foreclosure lawsuit against them, and Trans Union Credit generated credit reports on them which reflected that the foreclosure lawsuit was pending, even though First Bank had voluntarily dismissed the lawsuit and had requested that Trans Union Credit correct its records to show that the lawsuit was improper. Plaintiffs caused a summons to be served upon United States Corporation Company (USCC), as registered agent for Trans Union Credit. Trans Union Credit, by its attorneys, Keck, Mahin & Cate, filed an appearance and an answer to the complaint in which it denied that First Bank had requested that it correct its records to reflect that the lawsuit was improper. In addition, Trans Union Credit asserted that it acted in a reasonable manner in publishing the information and plaintiffs' lawsuit was preempted by the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq*. (West 1994)).

On February 28, 1989, Trans Union Credit filed a motion requesting that the trial court dismiss plaintiffs' action with prejudice because plaintiffs failed to appear at their scheduled depositions. The trial court twice ordered plaintiffs to appear at the depositions. Plaintiffs failed to comply with the trial court's orders, and on December 20, 1989, the court dismissed the action for want of prosecution.

On January 2, 1990, Trans Union Credit filed a certificate of amendment with the State of Delaware, changing its corporate title to Trans Union Corporation. Also on January 2, 1990, Trans Union sent an application for amended certificate of authority to the State of Illinois, office of the Secretary of State (Secretary of State). On January 5, 1990, the Secretary of State issued a certificate to Trans Union reflecting the change to the new corporate title, Trans Union Corporation.

On December 19, 1990, plaintiffs refiled their action, naming First Bank as a defendant in seven counts and adding Trans Union Credit as the defendant in the eighth count. The count of the complaint addressed to Trans Union Credit contains allegations virtually identical to those in plaintiffs' original complaint. On the day plaintiffs filed the new complaint, they caused a summons to issue to USCC as registered agent for Trans Union Credit. The return of service shows that the deputy sheriff left a copy of the summons and complaint with Sue Prevost, the branch manager of USCC, on December 26, 1990. Trans Union Credit did not file an appearance or respond in any way to plaintiffs' complaint.

First Bank filed an appearance and obtained dismissal of four of the seven counts of the complaint addressed to it. Subsequently, on July 16, 1991, the trial court dismissed plaintiffs' action for want of prosecution. Upon motion of the plaintiffs, the cause was reinstated on November 13, 1991.

On April 29, 1992, plaintiffs mailed a notice of motion to USCC, as registered agent for Trans Union Credit, purporting to notify Trans Union Credit that plaintiffs would appear before the trial court on May 6, 1992, to seek an order of default against Trans Union Credit for its failure to file an appearance and answer the complaint. On May 7, 1992, the trial court granted plaintiffs' motion and entered an order of default against Trans Union Credit. Upon prove-up on May 20, 1992, the trial court entered a default judgment against Trans Union Credit in the amount of $962,683.

On August 29, 1994, more than two years after entry of the default judgment, plaintiffs caused a citation to discover assets to issue to "Trans Union Credit Information Co., n/k/a Trans Union Corporation." Plaintiffs directed the sheriff's office to serve Trans Union Credit at Trans Union's principal office in Illinois. The return of service shows that the deputy sheriff left a copy of the citation with Marilynn Hadasdy, an agent of Trans Union, on August 30, 1994. Plaintiffs also mailed copies of the citation and citation notice to "Trans Union Credit Information Co., n/k/a Trans Union Corporation" at Trans Union's principal office.

On September 16, 1994, Trans Union, by its attorneys, Keck, Mahin & Cate, entered a special and limited appearance and filed a motion to quash service of the summons and vacate the default judgment. Trans Union acknowledged that USCC was its registered agent on December 26, 1990, the day summons was served upon Sue Prevost. However, Trans Union maintained that the service of process was ineffective because the sheriff served a copy of the summons and complaint on USCC as registered agent for Trans Union Credit Infor-

mation Co., and no corporation bore that name after January 5, 1990. Trans Union alleged the first notice it received that plaintiffs had refiled their action was upon service of the citation to discover assets, which plaintiffs served at Trans Union's office, rather than at the office of its registered agent.

In support of its motion to quash the summons and vacate the default judgment, Trans Union filed the affidavit of Carol D'Ascenzo, whose duties included receiving all summonses forwarded by USCC and transmitting them to the general counsel's office at Trans Union. D'Ascenzo averred that she did not receive a summons in plaintiffs' cause. Trans Union also filed the affidavit of Denise A. Darcy, the associate attorney of Trans Union. Upon receipt of a summons, Darcy would open a file, record the pertinent information on a computer database, and forward the material to outside counsel at Keck, Mahin & Cate. Darcy averred that Trans Union had no record of receiving a summons and complaint in plaintiffs' cause or a notice of motion for entry of a default order.

Next, Trans Union submitted the affidavit of Bernadette Fahy, the regional manager of USCC and its sister corporation, Prentice-Hall Corporation System (PHCS). In the affidavit, Fahy stated that USCC currently served as the registered agent for 5,400 corporations. In December 1990, USCC acted as the registered agent for 4,219 corporations. Of the corporations it serviced currently, 670 had the name "Trans" or "Union" in their corporate titles. Fahy acknowledged that USCC once acted as the registered agent for Trans Union Credit. However, Trans Union Credit changed its name, and, as of December 26, 1990, USCC was not the registered agent for any company named Trans Union Credit Information Co.

Fahy admitted that the sheriff's office served a copy of the summons and complaint in plaintiffs' cause upon USCC, as registered agent for Trans Union Credit. According to USCC records, when USCC realized that it was not the registered agent for Trans Union Credit, USCC returned the summons and complaint to James F. Wisniewski, plaintiffs' attorney, on January 14, 1991. USCC informed Wisniewski that it was not the current registered agent for Trans Union Credit and advised him to contact the Secretary of State for information regarding Trans Union Credit. A copy of USCC's letter to Wisniewski was attached to Fahy's affidavit. On November 7, 1994, Trans Union submitted an additional affidavit from Fahy in which she averred that in December 1990 it was the practice of USCC to return the summons and complaint accompanied by a letter to counsel explaining why a summons could not be accepted. Further, copies of the complaint and summons would not be sent to any of the corporations serviced by

USCC. Fahy stated that an exhaustive search of the records of USCC and its sister company PHCS failed to disclose a transmittal form sent to any corporation, including Trans Union Corporation, or to the New York office of PHCS in connection with service of process in plaintiffs' cause. Such a transmittal form was prepared whenever USCC accepted service of summons, with one copy of the form sent to the official designee of the corporation to whom service was directed, one copy sent to the New York office of PHCS, and one copy filed in USCC's Chicago office.

Lastly, Trans Union filed the affidavit of William Edgar, supervisor of the annual report franchise tax section of the business services department of the Secretary of State. Edgar stated that in 1990, the policy of the Secretary of State was to return any service of summons in which the name of the corporation being served did not match the name of a corporation on the books and records of the Secretary of State. Under this policy, an agent of the office could return process papers that attempted to serve a corporation using that corporation's former name. Edgar estimated that 40% of the summonses received by the Secretary of State were returned for failure to comply with section 5.25 of the Business Corporation Act of 1983 (805 ILCS 5/5.25 (West 1994)), including failure to submit a summons with the correct name of the corporation being served and failure to submit an affidavit of compliance with section 5.25.

On February 2, 1995, the trial court entered an order quashing service of summons and vacating the default judgment entered against Trans Union Credit. Specifically, the court held that service of process upon USCC as the registered agent for Trans Union Credit was not effective service upon Trans Union. Without valid service of process, the order of default and the default judgment were void.

On March 7, 1995, plaintiffs filed a motion to reconsider and a motion to clarify the order entered on February 2, 1995. In the motion to clarify, plaintiffs sought a ruling that, by its order of February 2, 1995, the trial court intended to quash the summons issued against Trans Union Credit, while allowing an alias summons to issue against Trans Union. On June 19, 1995, the trial court denied plaintiffs' motion to reconsider. As to plaintiffs' motion to clarify, the motion judge indicated that the order of February 2, 1995, quashed service of the summons. The court then transferred the cause to another courtroom for further proceedings.

On August 4, 1995, plaintiffs caused a summons to issue against Trans Union Corporation, with a notation to serve USCC as registered agent for Trans Union. Trans Union, by its attorneys Keck, Mahin & Cate, filed an appearance and a motion pursuant to Supreme Court

Rule 103(b) (177 Ill. 2d R. 103(b)) to dismiss for failure to exercise reasonable diligence in obtaining service of process. Trans Union argued that plaintiffs obtained proper service upon Trans Union four years and eight months after they filed their lawsuit, eight years after the statute of limitations had run, and six months after the trial court vacated the order of default. The trial court denied the motion to dismiss and ordered Trans Union to file an answer or otherwise plead.

On January 16, 1996, Trans Union Corporation filed an answer to the complaint, which essentially mirrored the answer Trans Union Credit filed to the 1987 complaint. Once again, the answer raised affirmative defenses based upon the procedures Trans Union followed to ensure the accuracy of its information and preemption by the Fair Credit Reporting Act.

On March 5, 1996, Trans Union filed interrogatories and a request for production of documents. Upon plaintiffs' failure to respond to the requests for discovery, Trans Union filed a motion to compel. On July 20, 1998, the trial court granted the motion to compel and ordered plaintiffs to respond to the requests for discovery by August 3, 1998. Plaintiffs failed to comply with the court's order, and on August 3, 1998, the court dismissed plaintiffs' action with prejudice.

Plaintiffs chose not to challenge the order of August 3, 1998, on appeal. Instead, plaintiffs challenge only the trial court's order of February 2, 1995, which quashed the summons and vacated the default judgment entered against Trans Union Credit.

At the outset, we must address a jurisdictional question raised by Trans Union. Citing *Brauer Machine & Supply Co. v. Parkhill Truck Co.*, 383 Ill. 569, 50 N.E.2d 836 (1943), Trans Union maintains that an order quashing service of summons is final and appealable. Trans Union asserts that plaintiffs were required to appeal from the order of February 2, 1995, within 30 days of entry thereof. Plaintiffs' appeal, filed 3½ years later, was untimely.

In *Brauer*, an employee of the plaintiff was injured while unloading a steel structure that the defendant had delivered to plaintiff's place of business. The plaintiff sought to recover from the defendant compensation the plaintiff paid to its employee for these injuries. A summons was issued and served upon the Secretary of State in accordance with a provision of "An Act in relation to motor vehicles" (Ill. Rev. Stat. 1941, ch. 95½, par. 1 *et seq.*). The defendant appeared under a special and limited appearance and obtained a ruling from the trial court, quashing service of the summons. The plaintiff appealed.

■ The defendant maintained that the appellate court lacked jurisdiction over the appeal because the order quashing service of the summons was not final and appealable. Both the appellate court and the

supreme court disagreed. The supreme court observed that an appeal lies only from a final order or judgment. To be final and appealable, "a judgment must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment." *Brauer*, 383 Ill. at 574. However, "[t]he final decision from which an appeal lies does not necessarily mean such decision or decree, only, which finally determines all the issues presented by the pleadings. It may, with equal propriety, refer to the final determination of a collateral matter, distinct from the general subject of the litigation, but which, as between the parties to the particular issue, settles the rights of the parties. *** A final judgment is one which finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof." *Brauer*, 383 Ill. at 574-75.

The court then observed:

"[T]he order quashing the service of the summons was the determination of a collateral issue, distinct from the general subject matter of the litigation. Such order, however, finally settled that issue, as between the parties to this lawsuit. It disposed of all the rights of the parties to the action, upon a definite and separate branch of the controversy. It ended or concluded the matter as a final judgment. The effect of this order was a final adjudication that [the defendant] was not subject to service of process in accordance with the provisions of the applicable section of the Motor Vehicle Act. *** While this issue was separate and distinct from the general controversy involved in the case, it was no less decisive. The order of the court quashing the service finally disposed of the case as to [the defendant]. While it was not a final determination of the subject matter of the suit, it was a final determination of the subject matter of the order. The effect of the order was a final determination of the suit, notwithstanding the decision was only on one definite and separate branch of the controversy." *Brauer*, 383 Ill. at 577.

In *Brauer*, as well as *Connaughton v. Burke*, 46 Ill. App. 3d 602, 361 N.E.2d 87 (1977), *In re Marriage of Kelso*, 173 Ill. App. 3d 746, 527 N.E.2d 990 (1988), *DiNardo v. Lamela*, 183 Ill. App. 3d 1098, 539 N.E.2d 1306 (1989), and *Cavanaugh v. Lansing Municipal Airport*, 288 Ill. App. 3d 239, 681 N.E.2d 39 (1997), all cited by Trans Union for the proposition that an order quashing service of summons is final and appealable, the plaintiffs had either sued one defendant or, having sued more than one defendant, the additional defendants had been dismissed. Thus, in each instance, the order quashing service of the summons was both a final order, because it disposed of all the rights of the parties to the action upon a definite and separate branch of the

controversy, and appealable, because it disposed of the cause unless plaintiff obtained service in some other manner. See *Brauer*, 383 Ill. at 577-78; *Cavanaugh*, 288 Ill. App. 3d 239, 681 N.E.2d 39. Such is not the case in the action at bar. Plaintiffs sued two parties, First Bank and Trans Union Credit. Thus, while the order of February 2, 1995, was determinative as to whether service of summons upon USCC as registered agent for Trans Union Credit was proper, it was not an appealable order because it was a judgment as to fewer than all parties or claims and did not dispose of the entire proceedings. In such a case, Supreme Court Rule 304 provides that a party can appeal "only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." 155 Ill. 2d R. 304(a).

■ In *Schiffman v. Bowman*, 88 Ill. App. 3d 766, 411 N.E.2d 71 (1980), we faced a similar challenge to our jurisdiction. We observed:

"[A]n order quashing process upon a defendant is characterized as being final between that defendant and the plaintiff. [Citation.] This was, however, a final order which did not dispose of the entire proceeding, since defendants Bowman and Reed remained in the action. Thus, appeal to this court from the order could have been made prior to final judgment as to all parties only upon an express written finding of the trial court that there was no just reason to delay appeal. [Citations.] No such finding was entered in this case ***. Therefore, this court may not presently entertain the issue of the propriety of the order quashing process." *Schiffman*, 88 Ill. App. 3d at 770.

As in *Schiffman*, the order quashing service of the summons here did not contain a finding by the trial court that there was no just reason to delay an appeal. The order was not appealable. Thus, we reject Trans Union's contention that this court does not have jurisdiction over this cause.

Next, we consider plaintiffs' contention that the trial court erred in quashing service of the summons and vacating the default judgment. Plaintiffs maintain that the sheriff served the summons upon the registered agent for Trans Union Credit. The fact that Trans Union Credit changed its corporate title prior to the time of service does not invalidate service of process. Plaintiffs conclude that this matter involves a misnomer, which could have been corrected at any time.

Trans Union protests that service was invalid because plaintiffs filed an action against, and attempted to obtain service upon, Trans Union Credit, a nonentity. Trans Union maintains that this matter involves misidentification of a party and the trial court properly quashed service of the summons.

■ A misnomer, where a plaintiff sues and serves the correct party but calls that party by the wrong name, "is not a ground for dismissal but the name of [the] party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2—401(b) (West 1994); see *Estate of Henry v. Folk*, 285 Ill. App. 3d 262, 264, 674 N.E.2d 102 (1996). Further, the misnamed party may be served with corrected process after the statute of limitations has expired, if the plaintiff used reasonable diligence in obtaining service. *Thielke v. Osman Construction Corp.*, 129 Ill. App. 3d 948, 473 N.E.2d 574 (1985). However, as we observed in *Zito v. Gonzalez*, 291 Ill. App. 3d 389, 392-93, 683 N.E.2d 1280 (1997), "[t]he misnomer rule is a narrow one and applies only where a plaintiff brings an action and a summons is served upon a party intended to be made a defendant. [Citation.] Thus, actual notice of the lawsuit is given to the real party in interest, but the process and complaint are styled in other than the party's correct name."

■ In contrast, mistaken identity occurs when the wrong party is named and served. *Thielke*, 129 Ill. App. 3d at 950-51. In cases of mistaken identity, section 2—616 of the Code of Civil Procedure (735 ILCS 5/2—616 (West 1994)) applies and service is required before the running of the statute of limitations. *Perry v. Public Building Comm'n*, 232 Ill. App. 3d 402, 406, 597 N.E.2d 723 (1992).

■ We need not decide, however, whether this case involves a misnomer or misidentification of a party, because plaintiffs did not provide actual notice to Trans Union and such notice is a prerequisite for correction of a misnomer. The return of service shows that USCC was served as the registered agent for Trans Union Credit. At the time service was made, USCC was not the registered agent for Trans Union Credit. USCC sent a letter to plaintiffs' attorney, advising him that USCC was not the registered agent for Trans Union Credit and returning the summons and complaint. USCC did not forward the summons or complaint to any of the corporations for which it served as registered agent because it could not identify the corporation plaintiffs intended to sue. As a result, Trans Union, the real party in interest, did not receive actual notice of the lawsuit until plaintiffs filed their citation to discover assets.

This case bears certain similarities with *Thielke*. In *Thielke*, the plaintiff misspelled the name of one defendant. The trial court quashed the service of summons. After the plaintiff filed an amended complaint and served a corrected summons, the trial court held the complaint time-barred because the limitations period had expired. On appeal, we ruled that the misnomer statute applied and the plaintiff had used reasonable diligence in obtaining corrected service on the defendant.

We ordered the trial court to permit the plaintiff to proceed to the merits of his action.

Here, once the trial court vacated the default judgment, the court allowed a summons to issue for service on USCC as registered agent for Trans Union. Further, the trial court denied Trans Union's Rule 103(b) motion to dismiss. The cause proceeded to discovery and would have been tried on the merits were it not for plaintiffs' failure to comply with discovery orders. In essence, the court afforded plaintiffs the relief applicable for a misnomer.

In the case at bar, plaintiffs would like to obtain relief under the misnomer statute while keeping in place the order of default and default judgment entered against Trans Union Credit. In *Ingram v. MFA Insurance Co.*, 18 Ill. App. 3d 560, 309 N.E.2d 690 (1974), the trial court refused to vacate a default judgment although the plaintiff misnamed the defendant in the complaint. The plaintiff proved that he obtained actual service on the real party in interest, who failed to respond despite full notification of the proceedings. The appellate court found that the defendant presented no reasonable justification for failure to respond and did not act with due diligence following notification of the default judgment. Under those circumstances the trial court did not abuse its discretion by denying the motion to vacate the judgment.

Here, by contrast, the evidence shows that plaintiffs knew they did not obtain actual service upon Trans Union. Fahy swore that USCC returned the summons and complaint to plaintiffs' attorney shortly after USCC determined that it was not the registered agent for Trans Union Credit. USCC advised plaintiffs to contact the Secretary of State to obtain current information on Trans Union Credit. Plaintiffs made no attempt to serve Trans Union under its correct name. Instead, plaintiffs obtained an order of default and a default judgment against Trans Union Credit. Plaintiffs then waited two years (a period coinciding with the time limitation to file a petition under section 2—1401 (735 ILCS 5/2—1401 (West 1994)) for relief from a final order or judgment) to issue a citation to discover assets. Plaintiffs addressed the citation to discover assets to Trans Union's office in Chicago, not to the registered agent, and plaintiffs used Trans Union's correct name. The attorneys who represented Trans Union Credit and Trans Union Corporation responded promptly to the original action and again moved promptly to vacate the default judgment once they received actual notice of that judgment. Because Trans Union justified its failure to respond to the complaint in which plaintiffs misnamed it, and defendant acted with due diligence, the trial court would have abused its discretion had it refused to vacate the default judgment.

See *Ingram*, 18 Ill. App. 3d at 567-68. By denying Trans Union's Rule 103(b) motion, the trial court permitted plaintiffs to proceed to discovery so that the court could decide the case on its merits. That is precisely the proper relief for this case, if the misnomer statute applied.

We have jurisdiction to decide this appeal because First Bank remained a party to the case after the court quashed service of process on Trans Union, and the court did not add Rule 304(a) language to the order quashing service. Trans Union never received actual notice of the refiled lawsuit, so the misnomer statute does not require reversal of the order quashing service. Moreover, even if the statute applied, the proper relief would have been to permit discovery to proceed so the court could decide the case on the merits, and the court afforded plaintiffs precisely that relief. The judgment of the trial court is affirmed.

Affirmed.

COUSINS, P.J., and McBRIDE, J., concur.